DANIEL E. SALINAS
89125-079
Federal Medical Center Devens
Post Office Box 879
Ayer, MA 01432-0879

<u>Pro Se Plaintiff</u>

FILED
CLERKS OFFICE

2004 JAN 30  P 12: 19

DISTRICT COURT
DISTRICT OF MASS.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL E. SALINAS, | ) |
| Pro Se Plaintiff, | ) |
| | ) **04-40015** |
| v. | ) CIVIL DOCKET |
| | ) 2004-CV-_____ |
| UNITED STATES OF AMERICA, | ) |
| on behalf of the Federal | ) |
| Medical Center Devens, | ) Judge _____ |
| | ) |
| Defendants. | ) |

## <u>COMPLAINT</u>

Daniel Eluid Salinas, Pro Se Plaintiff, hereinafter ("Plaintiff"), for his complaint alleges on personal knowledge as to his own acts and otherwise upon information and belief as follows:

NATURE OF ACTION

1.   Plaintiff files the instant civil rights prisonlitigation based on the defendants' misconduct in violating the Prison Organ Transplantation Policy, Program Statement 6000.05, section 21. Plaintiff sets forth below the detailed allegations showing the defendants' breach of prison community standard of care medical policy.  The overwhelming evidence exhibits attached hereto with the detailed allegations set forth below may cause the court to rule the defendants' misconduct demonstrates constitutional violations under cruel and unusual punishment in breach of the Eighth Amendment by failing to provide adequate medical treatment.  Plaintiff will show below how the defendants' misconduct acted intentionally by interfering and denying access to the prescribed community standard of care.

THE DEFENDANTS CAUSED IRREPARABLE HARM TO THE PLAINTIFF

UNDER HEMODIALYSIS PREVENTING THE RIGHT TO A KIDNEY TRANSPLANT

IN VIOLATION OF THE B.O.P. MEDICAL POLICIES

2.   On or about October 2001, the Plaintiff was transferred to the Federal Medical Center (F.M.C.) Devens in Ayer, Massachusetts, based on his serious medical condition.  F.M.C. Devens claims to be some kind of medical institution where the medical director,

Dr. S. Howard, M.D., claims to act under the Federal Bureau of Prisons, hereinafter ("B.O.P.") Health care policy. Plaintiff claims the F.M.C. Devens Medical Director Dr. Howard violated and breached the B.O.P. medical policy that requires the Community Standard of Care. The instant action is filed under the defendants' violation of the B.O.P. medical policy in failing to care for or protect the Plaintiff from irreparable harm that is set forth below. F.M.C. Devens, by the Medical Director, Dr. S. Howard, M.D., violated and breached the B.O.P. health care policy that requires the community standard of care.

### THE DEFENDANTS OBSTRUCTED AND PREVENTED THE PLAINTIFF's RIGHT TO JOIN THE UNITED NETWORK OF ORGAN SHARING LIST AND ALL OTHER ORGANIZATIONS THAT PROVIDE KIDNEY ORGANS FOR TRANSPLANT IN VIOLATION OF THE B.O.P. MEDICAL POLICIES

3.  Plaintiff is age 56, suffering from irreparable harm, caused by the defendants' negligence in failing to position the Plaintiff on any of the kidney organ transplant lists. The Plaintiff suffers daily injury to his heart and organs based on being left to the treatment of hemodialysis, which is impaired by access dificulties due to his lupus anticoagulant condition. The defendants under- stand that they prevent the required community standard of care in providing a plan for kidney transplant in violation of the B.O.P. organ transplantation policy 6000.05, section 21, dated February 11, 2000. The Plaintiff sets forth below some of the history in the defendants' violations of

- 2 -

the B.O.P. medical policies that require the community standard
of care with the B.O.P. organ transplantation policy 6000.05, sec-
tion 21.  The instant action is filed under the defendants' vio-
lations of the B.O.P. medical policy that includes the B.O.P.
organ transplantation policy 6000.05, section 21.  The defendants
violated the required community standard of care B.O.P. policy in
failing to act under the B.O.P. organ transplantation policy
6000.05 section 21.  The plaintiff will die without the required
kidney transplant.

## JURISDICTION

4.  This court has jurisdiction over the subject matter of the
action pursuant to Title 28 U.S.C. §1331, a federal question with
28 U.S.C. §§2201 and 2202.  The Plaintiff did exhaust the multi-
levels of prison administrative remedies before filing the instant
action.  The Plaintiff filed his prison administrative remedies
first with the Warden at F.M.C. Devens.  Thereafter, the plaintiff
filed two more prison administrative remedies with the Federal
Bureau of Prisons Northeast region and thereafter with the B.O.P.
Central Office in Washington, D.C.  The Plaintiff did comply with
the three mandated levels of prison administrative remedies under
the Prison Litigation Reform Act, Title 42 U.S.C. §1997(e)(A) and
Booth v. Churner, 149 L.Ed. 2d 958 (2000).  The Plaintiff further
alleges the defendants acted with unconstitutional motives provi-
ding jurisdiction under Bivens v. Six Unknown Named Agents of the
Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The constitu-
tional violations were acted out by Dr. S. Howard, M.D., the

- 3 -

Medical Director at F.M.C. Devens.  The instant action is filed
under two parts of the defendants' misconduct.  The first part
shows violations of the B.O.P. medical policy and organ trans-
plantation policy.  The second part is deliberate indifference
constitutional violations by Dr. S. Howard.  The court may rule
the defendants violated the B.O.P. medical polciy under negligence
failing to follow the community standard of care in the first part
of the Plaintiff's allegations.  However, the evidence and facts
set forth below shows the defendants acted with constitutional
violations under <u>Bivens</u> law in deliberate indifference by Dr. S.
Howard, the Medical Director at F.M.C. Devens.

5.  All of the allegations in the complaint should be interpreted
under both issues, the defendants' violations of the B.O.P. medical
policy with deliberate indifference <u>Bivens</u> constitutional viola-
tions.  However, the court may rule the Plaintiff's second part
of his allegations under constitutional violations do not meet the
mandated burden.  Should the court rule that the defendants' in-
jury to the plaintiff does not meet the deliberate indifference
standard, the court may rule under the defendants' violations of
the B.O.P. medical policy community standard of care with viola-
tions under the B.O.P. organ transplantation policy 6000.05 sec-
tion 21.

<u>VENUE</u>

6.  This court holds venue over the Plaintiff and the Defendants
based on the claims of the defendants' misconduct taking place at

- 4 -

F.M.C. Devens.  The Plaintiff and Defendants F.M.C. Devens are
both located in this court's judicial district.  Federal statutes
with authority case law mandates the filing of the action in this
court's judicial district.  The defendand United States of America
is named on behalf of F.M.C. Devens who is part of the Federal
Bureau of Prisons.

### FACTUAL ALLEGATIONS SHOWING THE DEFENDANTS VIOLATED
### THE B.O.P. MEDICAL POLICY
### WITH THE B.O.P. ORGAN TRANSPLANTATION POLICY

7.    The United States of America is named on behalf of F.M.C.
Devens, who are part of the Federal Bureau of Prisons, hereinafter
("Defendants").  The allegations set forth below should be inter-
preted under two causes of action.  The first cause of action is
the defendants' breach and violations of the B.O.P. medical policy
that requires the community standard of care.  With the B.O.P.
medical policy, the defendants breached and violated the B.O.P.
organ transplantation policy 6000.05, section 21, causing irre-
parable harm to the Plaintiff.

8.    The second cause of action shows Bivens constitutional vio-
lations under deliberate indifference acted out by Dr. Howard, the
medical director at F.M.C. Devens.  Both causes of actions are
joined together in each allegation below.  The Plaintiff did not
name Dr. Howard as a defendant in the action at the filing of the
lawsuit.  However, the facts and law show the court should rule
by affirming Dr. Howard did act with deliberate indifference.

- 5 -

When the court rules on the fact and law regarding deliberate in-
difference by Dr. S. Howard, the Plaintiff should be allowed to
supplement the complaint by naming Dr. Howard as one of the defen-
dants.

9.    The Plaintiff was transferred to F.M.C. Devens on or about
October 2001, based on the Plaintiff's renal failure that took
place at Federal Prison camp (F.P.C.) Beaumont.  At F.P.C. Beaumont,
staff sent the Plaintiff to outside medical experts who confirmed
the plaintiff was suffering from renal failure that required
hemodialysis.  F.P.C. Beaumont is located in Texas, where the B.O.P.
has no available hemodialysis staff that are required under the
B.O.P. medical policy to treat the Plaintiff.

10.    The Plaintiff's renal failure caused the defendants to trans-
port the Plaintiff to F.M.C. Devens by private jet aircraft.  The
plaintiff's serious medical condition of renal failure prevented
the defendants' use of the standard B.O.P. transfer system.  In
moving the Plaintiff from the Prison Camp in Texas to F.M.C. Devens
in Massachusetts, Dr. S. Howard was  alerted that the Plaintiff's
renal failure required hemodialysis in order to prevent imminent
death.

11.    In Exhibit 1 attached hereto, we see V.J. Rajendra, M.D.
treating the Plaintiff.  Dr. Rajendra was arrested for violations
of U.S. Laws at F.M.C. Devens at the time she was treating the
Plaintiff.  Exhibit 1 confirms the Plaintiff suffered from hyper-
tension with coronary artery disease.  In addition, Exhibit 1

- 6 -

shows the Plaintiff's irreparable harm caused by his disease of
positive antilupus anticoagulant.   The well known disease prevents
the benefits of hemodialysis.

12.   Dr. S. Howard understood from the time the Plaintiff was
placed in detention at F.M.C. Devens that he suffered from irre-
parable harm caused by positive antilupus anticoagulant, hypertension
and coronary artery disease.   The foregoing serious medical diseases
prevents the use of long term hemodialysis.   Dr. S. Howard failed
to act under the B.O.P. transplantation policy 6000.05 section 21
in placing the plaintiff on any of the kidney organ donor lists.
Dr. S. Howard understood the risk of serious harm to the Plaintiff
by failing to take reasonable measures to abate the imminent Plain-
tiff's death.   Dr. S. Howard violated the B.O.P. medical policy
community standard of care by failing to place the Plaintiff on
the required kidney organ donor lists.   From October 2001 through
the filing of the instant action, Dr. S. Howard failed to place
the Plaintiff on any of the organ donor lists that includes the
United Network of Organ Sharing organization.

13.   The Plaintiff's prolonged medical deprivations by Dr. S.
Howard from October 2001 through the filing of the instant action
shows negligence, malpractice and deliberate indifference.   Dr.
S. Howard failed to place the Plaintiff on any donor sharing list
knowing the misconduct caused irreparable harm.   The Plaintiff
is prohibited from staying on or gaining the benefit from pro-
longed hemodialysis based on his very serious medical diseases.

## THE DEFENDANTS VIOLATED AND BREACHED THE B.O.P.

## ORGAN TRANSPLANTATION POLICY CAUSING IRREPARABLE HARM

## TO THE PLAINTIFF

14.  In <u>Exhibit 2</u> attached hereto we see the B.O.P. Organ Transplan-

tation policy 6000.05 section 21.  The policy sets forth the follo-

wing procedures:

> Section 21.  Organ Transplantation
>
> The Bureau will consider organ transplantation as a treatment option for inmates in accordance with the following procedures:
>
> a. When the Clinical Director at an institution determines it is medically necessary to evaluate an inmate's suitability for an organ transplant, he or she will initiate an organ transplant laboratory/specialist consultant work-up at the institution.
>
> * Once a specialist determines that an inmate may be a potential candidate for organ transplantation, and the Clinical Director recommends that further evaluation is medically appropriate, the inmate will be evaluated at an appropriate facility such as a transplant center in the vicinity of the institution or a Bureau Medical Referral Center.
>
> b. If an organ transplant center considers an inmate suitable for a transplant, the institution Clinical Director will then refer all pertinent medical/surgical/psychiatric documentation to the Medical Director for consideration.
>
> c. If the Medical Director determines that organ transplantation is medically inidicated, the inmate will be referred to an appropriate transplant center in accordance with Bureau policy, transplant center regulations, and state and federal laws.
>
> * Prior to **any** transplant center referreal, the Medical Director **must first obtain the concurrence of the Assistant Director, Correctional Programs Division**, to ensure that all security issues or correctional interests regarding referral of the inmate have been satisfied.
>
> d. The Bureau will pay medical care and hospitalization costs associated with organ donors.

- 8 -

> \* These expenses are limited to those costs directly
> related to the transplant procedure itself and
> does not include follow-up care associated with
> complications.

15.  Dr. Howard failed to consider the Plaintiff's right to a kidney organ transplant that is required in the B.O.P. Organ Transplantation policy in Exhibit 2 attached hereto.  The B.O.P. medical policy required Dr. Howard to act under the community standard of care with Exhibit 2 the B.O.P. Organ Transplantation policy.  Dr. Howard violated the above two B.O.P. policies knowing she was causing irreparable harm to the Plaintiff.

16.  Dr. Howard acted with the defendant knowing the Plaintiff faced irreparable harm when Dr. Howard and the defendants prevented the Plaintiff's right to have his required renal transplant evaluation from October 2001 through the filing of the instant action. The misconduct violated the two B.O.P. medical policies.

17.  Dr. Howard and the defendants violated the community standard of care with the B.O.P. organ transplantation policy by depriving the Plaintiff of his required renal transplant evaluation obstructing the right to gain a kidney donor from his family or any of the organ sharing organizations.  The misconduct took place from October 2001 through the filing of the action.

DR. HOWARD AND THE DEFENDANTS VIOLATED THE TWO B.O.P.

MEDICAL POLICIES IN THEIR ADVERSE DETERMINATIONS IN THE PLAINTIFF's

EXHAUSTION OF THE B.O.P. ADMINISTRATIVE REMEDIES REGARDING

THE OBSTRUCTION OF THE PLAINTIFF's RENAL TRANSPLANT REQUIRED

EVALUATION TO GAIN A KIDNEY DONOR THAT WOULD STOP THE

PLAINTIFF's IRREPARABLE HARM

18.  Dr. Howard and the defendants reviewed the Plaintiff's July 21, 2003, request for B.O.P. administrative remedy filed with the F.M.C. Devens warden Winn, number 305798-Fl.  The Plaintiff's exhaustion is attached hereto in <u>Exhibit 3</u> that requested a renal transplant evaluation for kidney transplantation under the B.O.P. organ transplantation policy 6000.05, section 21.

19.  Dr. Howard and the defendants set forth from October 2001 through the filing of the instant action that the Plaintiff had to first have a kidney donor before being allowed his renal transplant evaluation.  The misconduct prevented the transplant team from acting with the Plaintiff's family members to become the kidney donor.

20.  Dr. Howard and the defendants violated the two B.O.P. medical policies from October 2001 through the filing of the instant complaint by preventing the Plaintiff's organ transplant evaluation. The misconduct caused irreparable harm to the Plaintiff in the following required evaluation procedures with the Plaintiff's family members:

     a.    Failed to counsel and educate the Plaintiff's family members regarding the life saving need in becoming the Plaintiff's kidney donor;

     b.    Failed to provide the Plaintiff's family members with the needed education and understanding regarding their

risk in becoming the Plaintiff's kidney donor;

c.    Failed to provide the Plaintiff's family members with
the history of the Plaintiff's complex medical problems
showing his heart disease and positive antilupus anto-
coagulant disease that prevents access for hemodialysis;

d.    Failed to provide the Plaintiff's family members with
the problems the Plaintiff faced under further organ
damage by the prolonged use of the B.O.P. hemodialysis;

e.    Failed to provide the Plaintiff's family members with
the imminent risk of death the Plaintiff suffers with
by not having the required kidney donor transplant; and

f.    Failed to provide the Plaintiff's family members with the
education and counseling into how the organ donor organi-
zations would act with the Plaintiff's donors in inter-
changing the kidney with the family donor in order to
gain the right match needed for the plaintiff's transplant.


21. From October 2001 through the filing of the instant action,
Dr. Howard and the defendants knew the substantial risk of irre-
parable harm to the Plaintiff and disregarded that risk by failing
to take the reasonable measures under the B.O.P. renal transplant
evaluation policy with the Plaintiff's family members that is set
forth above.


22. On August 1, 2003, the defendants by F.M.C. Devens Warden
Winn filed the fabricated and fraudulent adverse determination in
Exhibit 4 attached hereto.  The wrongful Exhibit 4 response in the
Plaintiff B.O.P. exhaustion of remedies violated the two B.O.P.

medical policies.  Warden Winn violated the B.O.P. community stan-
dard of care policy with the B.O.P. organ transplantation policy
by filing the following:

> August 1, 2003 denial of the Plaintiff's B.O.P. Administrative
> Remedy:
>
> a.   The first paragraph in the wrongful denial confirms the
>      Plaintiff requested his renal transplant evaluation;
>
> b.   The second paragraph of the wrongful denial claims
>      Warden Winn was acting under the B.O.P. organ transplan-
>      tation policy 6000.05;
>
> c.   In the second paragraph of the wrongful denial, the Warden
>      set forth the Plaintiff had to first provide the kidney
>      donors name before being allowed the right to move ahead
>      with the required renal transplant evaluation.

23.  In Exhibit 4 the Warden Winn August 1, 2003, denial of the
Plaintiff's request for renal transplant evaluation we see the
following violations of the B.O.P. two medical policies:

> a.   Warden Winn claims the clinical director Dr. Howard had
>      to determine the Plaintiff's medical need to evaluate
>      the Plaintiff's suitability for an organ kidney trans-
>      plant;
>
> b.   The Plaintiff's F.M.C. Devens medical records showed the
>      Plaintiff's irreparable harm under the positive antilupus
>      anticoagulant disease that blocked the access for hemo-
>      dialysis and requiring a kidney transplant;
>
> c.   The Plaintiff's F.M.C. Devens medical records showed
>      the Plaintiff suffered a heart attack at the B.O.P.

Beaumont prison camp in Texas and had ongoing hyperten-
sion with coronary artery disease;

d.   The Medical Director Dr. Howard failed to act from
     October 2001 through August 1, 2003, when Warden Winn
     filed the fabricated and fraudulent denial preventing
     the required community standard renal transplant
     evaluation knowing the plaintiff faced imminent death
     without the requested transplant.

24.  Dr. Howard and the defendant violated the B.O.P. two medical
policies in preventing the plaintiff's renal transplant evaluation
based on all of the plaintiff's documented medical records from
October 2001 through the filing of the instant action.  The mis-
conduct caused the denial of the Plaintiff's B.O.P. exhaustion of
remedies by Warden Winn on August 1, 2003, in Exhibit 4 attached
hereto.

DR. HOWARD AND THE DEFENDANTS VIOLATED THE B.O.P. NORTHEAST
REGIONAL DIRECTOR's ORDERS IN HIS RESPONSE TO THE PLAINTIFF's
REQUEST FOR RENAL TRANSPLANT EVALUATION UNDER THE PLAINTIFF's
EXHAUSTION OF B.O.P. REMEDIES

25.  In Exhibit 5 attached hereto, we see the response from the
B.O.P. Northeast regional director M.E. Ray, dated September 18,
2003.  The response sets forth the following orders to Dr.
Howard that were violated:

### B.O.P. NORTHEAST REGIONAL DIRECTOR's ORDERS
### IN THE RESPONSE TO THE PLAINTIFF's EXHAUSTION OF B.O.P. REMEDIES

a. The September 18, 2003, response by the B.O.P. regional
Director, M.E. Ray, claims in the First Paragraph the
Plaintiff was not evaluated at F.M.C. Devens in order to
determine the physical suitability as a recipient for an
organ transplant.

b. The First paragraph in the response sets forth the
Plaintiff's claim that the transplant evaluation should
take place before the plaintiff is requested to identify
a potential kidney donor.

c. The second paragraph in the response claims the plaintiff
was referred to the kidney transplant work up team on
September 16, 2003.

d. The second paragraph in the response firther states
accordingly your B.O.P. appeal is partially granted in
that a kidney transplant work up evaluation has been
initiated.  The response explained  the plaintiff had
the right to appeal his claims to the B.O.P. General
Counsel's Office in Washington, D.C.
The Plaintiff did appeal his claims to the B.O.P. Gene-
ral Counsel's Office in Washington, D.C.


26.  Dr. Howard and the defendants violated the intent of the
above response setting forth the Plaintiff had the right to the
kidney transplant work up evaluation.  The Plaintiff was never
provided with the required community standard of care kidney

- 14 -

transplant evaluation.

27.  Dr. Howard and the defendants understood <u>Exhibit 5</u>, the B.O.P.
Northeast Regional Director's response.  However, Dr. Howard vio-
lated each element of the required kidney transplant evaluation
with the Plaintiff and his family members who could have been kid-
ney donors.  The details regarding the kidney evaluation experts
work with the Plaintiff's family members in becoming kidney donors
is set forth below and above.  No such required community standard
of care was undertaken by Dr. Howard or the defendants with the
Plaintiff's family members in order to become the Plaintiff's
kidney donor.

28.  Dr. Howard and the defendants violated the response from the
B.O.P. Northeast Regional Director's September 18, 2003, orders by
depriving the Plaintiff of the Community Standard of care medical
work up under the kidney transplant evaluation policy.  The mis-
conduct violated the following two B.O.P. medical policies:

     a.   The B.O.P. Medical Policy sets forth the Plaintiff must
          be provided with the community standard of medical
          treatment; and

     b.   The B.O.P. organ transplantation policy P.S. 6000.05
          section 21 dated February 11, 2000, sets forth the
          procedures needed for the Plaintiff's evaluation to
          provide the required kidney transplant in <u>Exhibit 2</u>
          attached hereto.

29.  Dr. Howard and the defendants violated the B.O.P. Northeast

Regional Director's response orders in the Plaintiff's exhaustion
of remedies wherein on September 18, 2003, the Regional Director
ordered the Plaintiff must start the organ transplant work up.
The response set forth the Plaintiff would be referred to the
kidney transplant work up team.  The team includes a nephrologist,
a social worker and a psychologist.  The Plaintiff claims the de-
fendants breached both B.O.P. medical policies by failing to pro-
vide the needed medical care of review with the social worker and
psychologist.

30.  Dr. Howard and the defendants failed to provide the social
worker and psychologist who would act under the kidney donor trans-
plant protocol.  The plaintiff was deprived the community standard
of medical care in the social worker and psychologist acting out
the transplant donor family members protocol inthe following
treatment areas under the September 18, 2003 Exhibit 5 response
in the Plaintiff's exhaustion of B.O.P. remedies.  The social
worker and psychologist are part of the kidney transplant team
who must assist the plaintiff's family members in the following
donor protocol:

    a.   The Plaintiff's family members require education in
          order to understand how the kidney donor protocol works
          with the family members;

    b.   The Plaintiff's family members need the donor protocol
          explaining the serious life saving need they can pro-
          vide in becoming the kidney donor;

    c.   The Plaintiff's family members must understand the
          risk involved by their becoming the kidney donor;

d.   The Plaintiff's family members must understand the
Plaintiff's time frame questions under further damage
to his heart and organs with the complex access restric-
tions the Plaintiff suffered with daily.  The Plaintiff
has positive antilupus antocoagulant disease that pre-
vents and restricts the hemodialysis access.

31.  Dr. Howard and the defendants failed to provide the above
kidney transplant family donor education knowing the Plaintiff's
substantial risk of irreparable harm when they disregarded the
Plaintiff's risk and irreparable harm that their reasonable
measures could have abated.

DR. HOWARD AND THE DEFENDANTS PREVENTED THE PLAINTIFF's EFFORT
WITH THE KIDNEY SHARING DONOR ORGANIZATIONS THAT WERE NEEDED
TO ACT WITH THE PLAINTIFF's FAMILY MEMBERS TO GAIN
THE RIGHT KIDNEY DONOR MATCH

32.  Dr. Howard and the defendants knew the substantial risk of
serious harm they caused the Plaintiff by preventing and obstruc-
ting the Plaintiff's access to the kidney sharing donor organiza-
tions.  Dr. Howard and the defendant understood the Plaintiff
faced imminent death without access to the kidney sharing donor
organizations.  The Plaintiff was deprived his right to have his
family members participate in the kidney sharing donor organiza-
tions protocol that would provide the kidney for transplant.

33.  The Plaintiff is in federal detention with obstructed medical

- 17 -

access to the kidney donor sharing organizations that are needed
for the kidney organ transplant.  Dr. Howard and the defendants
understood the substancial risk of serious harm in preventing the
Plaintiff's access to the kidney donor sharing organizations.

34.  Dr. Howard and the defendants failed to provide the social
worker and psychologist who are explained in Exhibit 5, the
September 18, 2003, B.O.P. regional director's response

   a.  By failing to provide the needed social worker and psy-
       chologist.  Dr. Howard and the defendants disregarded
       the Plaintiff's chance to gain his family member's parti-
       cipation with the kidney organ sharing organizations.
       The misconduct sabotaged the intent of the B.O.P. organ
       transplantation policy in exhibit 2 attached hereto.

   b.  The Plaintiff is in federal detention and was deprived
       the required community standard of care that is the
       basis of the B.O.P. medical policy.  The Plaintiff was
       deprived all access to the required kidney organ sharing
       organizations in breach and violation of the two B.O.P.
       medical policies by Dr. Howard and the defendants.  The
       misconduct took place from October 2001 through the
       filing of the instant action.

   c.  All of the medical deprivations that are set forth in
       the instant action took place from October 2001 through
       the filing of the instant action.  The misconduct is in
       violation and breach of the B.O.P. two medical policies
       and were acted out by Dr. Howard and the defendants.
       The Plaintiff will set forth below some of the medical

issues that took place under the need for the required
B.O.P. policies, procedure for the kidney organ trans-
plant to prevent the ongoing irreparable harm the Plain-
tiff suffered with daily.

### B.O.P. MEDICAL RECORDS SHOWING THE NEED FOR PLAINTIFF's KIDNEY ORGAN TRANSPLANTATION PROTOCOL UNDER THE TWO B.O.P. MEDICAL POLICIES

35.    In Exhibit 6 attached hereto, we see the stamp on the lower
part of the F.M.C. Devens nephrology consultation monthly note
medical record.  The stamp shows the date of 7-1-2002 by N.
Rencrieca, M.D., who was the medical officer at F.M.C. Devens.

    a.    Plaintiff claims Dr. Rencrieca terminated his F.M.C.
Devens position in 2003 over the wrongful misconduct
that was acted out by Dr. Howard in failing to follow
the B.O.P. medical policies.

    b.    Dr. Howard and the defendants understand the claims made
by Dr. Rencrieca regarding the wrongful misconduct that
was ongoing by Dr. Howard in 2002 and 2003.  Dr. Ren-
crieca informed Dr. Howard and the defendants that the
ongoing medical procedures at F.M.C. Devens were in
violation and breach of the two B.O.P. medical policies.
The same details were provided to Dr. Howard and the
defendants by Dr. Williams, who terminated her medical
position at F.M.C. Devens in 2003.

36.    In Exhibit 6 at the first paragraph, the F.M.C. Devens Medical

- 19 -

record confirms the Plaintiff's medical history since 1996.  The
medical record in the first paragraph shows the Plaintiff has

    a.   History of nephhropic syndrome since 1996 with hypertension;

    b.   Positive lupus anticoagulant disease that prevents
        access for ongoing hemodialysis;

    c.   Coronary artery disease status Post MI, GERD, Peri-
        pheral vascular disease with leg ulcers, hyperlipidemia;

    d.   The Plaintiff thrombosed an AV fistula;

    e.   The assessment plan states the Plaintiff has very little
        kidney function.  In addition the plan orders the Plain-
        tiff neeeded peritoneal dialysis catheter.  That proce-
        dure was required under the Plaintiff's ongoing hemodia-
        lysis access restrictions.  The peritoneal procedure
        was performed on the Plaintiff and it failed.

    f.   The Medical record shows in the third paragraph physical
        exam wherein it states the heart sounds systolic murmur.

37.  The Plaintiff claims Dr. Howard and the defendants failed to
address the serious heart deprivations the Plaintiff suffered with.
The Plaintiff had a heart attack in the prison camp some time be-
fore his transfer to F.M.C. Devens by private jet aircraft in
October 2001.

38.  Plaintiff claims the above medical record shows Dr. Howard
and the defendants violated the B.O.P. medical policy that provides
the community standard of care.  The medical record demonstrates
the Plaintiff had to be put on the required organ sharing organi-
zations list to gain a kidney for transplant.  The Plaintiff's

disease positive antilupus anticoagulant prohibits the benefit of
hemodialysis.  The Plaintiff's kidneys are dead, unable to operate.
The prolonged use of hemodialysis is negligence by the defendants
and Dr. Howard by failing to act in providing the plaintiff access
to the organizations that provide kidney organs.

39.  The Plaintiff claims Dr Howard and the defendants failed to
act under the nephrologist opinion that said the plaintiff should
proceed with the kidney transplant evaluation.  Exhibit 8 shows
the nephrology consultation monthly note regarding the plaintiff's
condition needing the transplant evaluation.

## DR. HOWARD AND THE DEFENDANTS VIOLATED THE B.O.P. TWO MEDICAL POLICIES BY DEMANDING THE PLAINTIFF HAD TO ACT ON HIS OWN IN PROVIDING THE NEEDED KIDNEY DONOR

40.  On May 22, 2003, in Exhibit 7 attached hereto, Dr. Howard
and the defendants violated the two B.O.P. medical policies by
demanding the Plaintiff had to first produce on his own the needed
kidney donor.

41.  On May 1, 2003, the Plaintiff wrote Dr. Zambetti, the F.M.C.
Devens expert medical official who is the nephrologist.  Exhibit 7
attached hereto shows the Plaintiff's inmate request to staff Dr.
Zambetti requesting the required Renal transplant evaluation.
The Plaintiff's Exhibit 7 writing details some of the medical
failures that were ongoing with the Plaintiff's well documented
diseases.  One of the key medical complaints in the writing ex-

- 21 -

plained the Plaintiff had serious trouble maintaining an efficient access to be dialized. The positive antilupus anticoagulant disease prevented the Plaintiff's benefit from hemodialysis. On May 22, 2003, Dr. Howard responded with her writing demanding the Plaintiff had to act on his own in providing the required kidney donor. Dr. Howard responded on behalf of Dr Zambetti, the expert nephrologist in Exhibit 7.

42. The B.O.P. organ transplantation policy 6000.05, chapter VI, page 21, dated February 11, 2000, at section 21, does not in any way demand the Plaintiff had to provide the kidney donor on his own before the transplant evaluation. However Exhibiy 7 shows Dr. Howard violating the B.O.P. medical policy that requires the community standard of care with the B.O.P. organ transplant policy by demanding the plaintiff provide the kidney donor on his own.

43. The Plaintiff claims Exhibits 4 and 7 written by the defendants F.M.C. Devens Warden Winn in 4 and Dr. Howard in 7 demanding the Plaintiff provide the kidney donor without adequate medical care violates both B.O.P. medical policies. The Plaintiff was deprived the adequate medical protocol with the social worker and psychologist that was ordered in Exhibit 5 the B.O.P. Regional Director's response under the exhaustion of remedies. The plaintiff has no training or education needed to address the complex medical issues in dealing with kidney donors. The plaintiff has no access via phone provided by the B.O.P. to provide the adequate medical details to his family members in order to cause them to become the kidney donor. The defendants and Dr. Howard violated

each part of the two B.O.P. medical policies by demanding the Plaintiff had to act on his own in finding the kidney donor from prison.

44.  The Plaintiff claims that his status as a federal inmate provides very restrictive access to his family and the community. Dr. Howard and the defendants in Exhibits 4 and 7 violated and breached the two B.O.P. medical policies by placing the complex burden on the Plaintiff to explain and act with people to become his kidney donor.

45.  The Plaintiff claims the transplant team and or the social worker and psychologist must act with his family members in the effort of gaining the kidney donor.  The Plaintiff was unable to take over the complex medical role in addressing kidney donor transplantation that was demanded in Exhibits 4 and 7 by Dr. Howard and Warden Winn.  These violations of the two B.O.P. medical policies took place when Dr. Howard and the defendants did not place the Plaintiff on the organ sharing organizations list before demanding the Plaintiff had to act on his own in providing the kidney donor. By withholding access to the organ sharing organizations and demanding the plaintiff act alone in providing the kidney donor Dr. Howard and the defendants violated the two B.O.P. medical policies causing irreparable harm to the Plaintiff.

46.  The B.O.P. organ transplantation policy 6000.05 section 21 chapter VI at pages 21 and 22, provides the B.O.P. procedures in addressing the kidney donors.  At page 22 we see the Dr. Howard

- 23 -

and defendants violations of the two B.O.P. medical policies wherein page 22 sets forth the Bureau of Prisons will pay medical care and hospitalization costs associated with the organ donors.


47. Dr. Howard and the defendants failed to follow the B.O.P. organ transplantation policy written intent in addressing the kidney organ donors. At page 22 in policy 6000.05, the burden of acting with the kidney donors falls on the B.O.P. not the Plaintiff uder the following:

> (d) The Bureau of Prisons will pay medical care and hospitalization costs associated with the kidney donors.


48. The above B.O.P. organ transplantation policy demonstrates the Dr. Howard and defendants violations of the intent of medical care associated with the kidney donors. The <u>Exhibits 4 and 7</u> demanding the plaintiff had to take over the medical role in acting with the kidney donors shows the violations of the two B.O.P. medical policies by Dr. Howard and the defendants. The breach and violations of the two medical policies caused irreparable harm to the plaintiff. The Dr Howard and defendants misconduct deprived the plaintiff's access in securing the kidney donor. The Plaintiff has no kidney donor based on the Dr. Howard and defendants' misconduct.


49. Based on the above violations of the two B.O.P. medical policies by Dr. Howard and the defendants, the plaintiff was deprived access to the kidney transplant work up evaluation procedures. The misconduct caused irreparable harm to the Plaintiff.