DR. ZAMBETTI, THE EXPERT MEDICAL NEPHROLOGIST,

SETS FORTH THE PLAINTIFF HAD TO HAVE A KIDNEY ORGAN TRANSPLANT

THAT WAS PREVENTED BY DR. HOWARD AND THE DEFENDANTS

IN VIOLATION OF THE TWO B.O.P. MEDICAL POLICIES

CAUSING IMMINENT DEATH TO THE PLAINTIFF

50.  In Exhibit 8 on June 12, 2002, the B.O.P. Medical Expert
nephrologist said the Plaintiff had to have a kidney transplant.
Exhibit 8 is attached hereto wherein Dr. Zambetti issued his
nephrology consultation monthly note setting forth the Plaintiff
had to have a kidney transplant based on the Lack of maintaining hemodia-
lysis as adequate medical care.  The medical problem explained by
Dr. Zambetti was the Plaintiff's positive antilupus anticoagulant
disease that prevented adequate hemodialysis.  The Plaintiff
suffered ongoing with many operations that attempted to open more
and more access parts in the Plaintiff's body.  After each opera-
tion to open a new access for the hemodialysis procedure, the
access would close and block the hemodialysis.  The failure of
the many operations came from the Plaintiff's antilupus anti-
coagulant disease.

51.  Dr. Howard and the defendants understood the substantial
risk the Plaintiff faced without the required kidney organ evalu-
ation with the transplant team based on the Dr. Zambetti Exhibit 8
writing confirming the Plaintiff needed a kidney transplant.
However Dr. Howard and the defendants caused irreparable harm
to the Plaintiff by withholding and preventing the adequate medi-
cal care under the kidney donor evaluation B.O.P. policy.

- 25 -

The misconduct by Dr. Howard and the defendants violated the B.O.P. medical policy that requires the community standard of care.

52.  On May 15, 2002, in Exhibit 9, we see three F.M.C. Devens medical records showing the Plaintiff needed to proceed with the required pre-transplant kidney donor evaluation.  However Dr. Howard and the defendants withheld and prevented the Plaintiff from the required adequate medical kidney transplant evaluation. The misconduct violated the two B.O.P. medical policies.

53.  Dr. Howard and the defendants had documented evidence in Exhibits 8 and 9 showing the Plaintiff required adequate medical care by providing the B.O.P. organ transplant kidney donor trans- plant work up evaluation.  However, Dr. Howard and the defendants failed to act with the Plaintiff by withholding and preventing the required kidney organ transplant work up evaluation with the outside transplant team.  Dr. Howard and the defendants failed to place the Plaintiff on any of the kidney organ donor sharing organizations list.  The misconduct caused the Plaintiff irre- parable harm facing imminent death without the kidney transplant donor.

THE PLAINTIFF WAS UNABLE TO COMPLY
WITH THE DR. HOWARD AND DEFENDANTS' WRONGFUL DEMAND
TO PRODUCE A KIDNEY DONOR BEFORE BEING ALLOWED THE B.O.P.
KIDNEY TRANSPLANT WORK UP AND EVALUATION
THAT CAUSED THE PLAINTIFF'S IMMINENT DEATH

54. In Exhibits 4 and 7 attached hereto, Dr. Howard and the
F.M.C. Devens Warden Winn demanded the Plaintiff had to first pro-
vide his named kidney donor before proceeding with the adequate
medical B.O.P. kidney donor transplant evaluation.  However, the
Plaintiff was unable to comply with the wrongful demand to produce
his named kidney donor.  The issue for the Court's interpretation
is the Plaintiff's imminent death that will now take place without
the kidney donor B.O.P. transplant evaluation.

55. The Plaintiff sets forth above all the steps that took place
with Dr. Howard and the defendants.  However, the Plaintiff was
deprived the adequate medical B.O.P. transplant kidney donor
evaluation under the b.O.P. organ transplant policy attached
hereto and detailed above.  The Plaintiff faces imminent death
without proceeding under the B.O.P. organ donor transplant policy.
The Plaintiff can not stay on prolonged hemodialysis based on
his positive antilupus anticoagulant disease.

## THE ABOVE DEFENDANTS AND DR. HOWARD's MISCONDUCT
## CHANGED THE TERM OF THE PLAINTIFF's SHORT PRISON SENTENCE

56. The Plaintiff is now serving a prison death sentence that
was never issued by the federal court based on the above medical
deprivations.  The federal court would have interpreted the above
Plaintiff's medical problems at sentence under downward departure
U.S.S.G. 5H1.4.  However, the Plaintiff suffered the irreparable
harm after his federal sentence when he was held in B.O.P. de-
tention.  The court's interpretation of the Plaintiff's legal

- 27 -

rights to proceed with the required adequate medical care under
the B.O.P. organ kidney donor evaluation is at hand.  The defen-
dants and Dr. Howard have now converted the Plaintiff's short
prison sentence into a death sentence with the above medical
deprivations.

57.  The defendants and Dr. Howard failed to put the Plaintiff on
the kidney donor sharing organizations lists when they knew that
was the reasonable measures that were required.  The Plaintiff
lives in Texas where he could benefit from that District's
Kidney donor organ sharing organizations list.  The Plaintiff's
security B.O.P. level is camp status.  Based on the Plaintiff's
B.O.P. camp status security level, the B.O.P. has no security
restrictions against the Plaintiff in his B.O.P. detention.
The issue of where the B.O.P. transplant team would list the
Plaintiff's available district for the organ donor sharing organi-
zations may not act with the Plaintiff's imminent death medical
issues.  However, the Texas family members and persons who could
become the kidney donor is a question the B.O.P. transplant team
failed to address in the obstruction of the transplant donor
evaluation protocol.

58.  The Plaintiff claims Dr. Howard and the defendants failed
to consider under the B.O.P. transplant policy what district
Boston or Texas would provide the best organ sharing kidney donor
organizations to benefit the Plaintiff.

59.  The B.O.P. organ transplant policy 6000.05 chapter VI section

- 28 -

21, dated February 11, 2000, that is explained above and attached hereto in <u>Exhibit 2</u> does not provide for any interpretation regarding the adequate medical requirement in placing the Plaintiff on any of the organ donor sharing organizations list.  The Plaintiff suffers irreparable harm by being delayed from October 2001 through the filing of the instant action in resolving the placement on the kidney donor organ sharing organization list.

60.  The adequate medical care protocol under the B.O.P. organ transplantation policy demands the Plaintiff should have been placed on the kidney donor sharing organizations list in October 2001.  The Plaintiff can face a two year delay in waiting for the kidney donor organ when he is placed on the organ sharing list.

<u>THE DEFENDANTS AND DR. HOWARD FAILED TO PLACE THE PLAINTIFF ON</u>
<u>THE MEDICALLY REQUIRED KIDNEY DONOR ORGAN SHARING LIST</u>
<u>CAUSING IRREPARABLE HARM TO THE PLAINTIFF</u>

61.  Dr. Howard and the defendants failed to act under the medically required protocol in placing the Plaintiff on the kidney donor organ sharing list.  The misconduct took place over years starting in October 2001.  The irreparable harm to the Plaintiff comes from the prolonged delay in waiting years for the kidney donor sharing organizations to provide the kidney.  If the Plaintiff provides a kidney donor in the future, the need for the organ donor sharing organizations will exchange the kidney needed for the Plaintiff's transplant if his donor match is wrong.  However, Dr. Howard and the defendants violated the B.O.P.

- 29 -

medical policy that requires the community standard of care with the above medical deprivations.

## THE DEFENDANTS F.M.C. DEVENS PLAINTIFF's MEDICAL RECORDS DEMONSTRATE THE FAILURE IN PROVIDING THE MEDICALLY ADEQUATE ORGAN TRANSPLANT EVALUATION AND PLACEMENT OF THE PLAINTIFF ON THE KIDNEY DONOR SHARING ORGANIZATIONS LISTS THAT WAS PREVENTED BY DR. HOWARD AND THE DEFENDANTS

62.  The defendants F.M.C. Devens Plaintiff's medical records explained above and below, demonstrate the violations of the B.O.P. medical policy that requires the community standard of care by Dr. Howard and the defendants.  The Plaintiff was deprived the B.O.P. organ transplant evaluation from October 2001 through the filing of the instant action.  The Plaintiff was further deprived the right to joining the kidney donor sharing organizations list from October 2001 through the filing of the instant action.

63.  The kidney donor sharing organizations could take a number of years in providing the plaintiff the needed kidney.  However, the kidney organization would act at once with the Plaintiff if he had his own kidney donor that was the wrong match with the Plaintiff in that case, the kidney donor organization would exchange the Plaintiff's donor kidney with the right matched kidney for transplant.  However, Dr. Howard and the defendants prevented the above adequate medically required protocol to proceed.  The Plaintiff presents a sample only of his medical records below.

- 30 -

64. On September 19, 2002, F.M.C. Devens issued <u>Exhibit 10</u> that
is attached hereto, showing the Plaintiff was unable to have
peritoneal ████dialysis access.  That failure prevents a key access
area needed to provide ongoing ████dialysis for the plaintiff.
The medical record blames the plaintiff's positive antilupus anti-
coagulant disease for the documented failure.  The serious medical
failure demonstrates the Plaintiff's medically necessary organ
transplant evaluation that was deprived by Dr. Howard and the
defendants.

65. On May 21, 2002, U-Mass Memorial Medical Center issued <u>Exhibit
11</u> explaining the Plaintiff's referral to the hospital by F.M.C.
Devens under a number of medical problems, including shortness of
breath.  <u>Exhibit 11</u> shows the detailed medical problems the Plain-
tiff was suffering with that needed treatment.  The prolonged use
of the B.O.P. hemodialysis is a main cause of the Plaintiff's
pain and suffering that could have been prevented by Dr. Howard
and the defendants.  The use of prolonged hemodialysis harms and
damages the Plaintiff's body.

66. On October 23, 2001, the University of Texas Medical Branch
Hospital in Galveston, Texas, issued <u>Exhibit 12</u> attached hereto.
Dr. Howard and the F.M.C. Devens prison clinic on behalf of the
defendants had <u>Exhibit 12</u> showing the Plaintiff's positive anti-
lupus anticoagulant disease when the plaintiff was placed in F.M.C.
Devens detention.  However, Dr. Howard and the defendants failed
to act under the two B.O.P. medical policies regarding the Plain-
tiff's serious medical deprivations.

- 31 -

67.  On December 12, 2001, the Health Alliance Hospital at the
Leominster, Massachusetts campus issued exhibit 13 attached hereto
showing the Plaintiff's medical admission.  The exhibit 13 Health
Alliance Hospital record confirms the plaintiff's chronic renal
failure and need for hemodialysis.  The record shows a short history
of the Plaintiff's medications and past medical problems.  The
assessment required a fistula to provide access for the needed
hemodialysis.  However, the Plaintiff suffered ongoing with each
fistula access operation failing.  The Plaintiff's prositive anti-
lupus anticoagulant disease closed each access fistula preventing
adequate medical treatment under B.O.P. hemodialysis.

Exhibit 13 shows the stamp of the F.M.C. Devens medical official
V.J. Rajendra, M.D., who was arrested for violating United
States Laws at the time she was treating the Plaintiff.  The
V.J. Rajendra M.D. stamp demonstrates she was the medical
B.O.P. official who interpreted Exhibit 13 at April 10, 2002,
months after the December 12, 2001 Health Alliance Hospital
medical record was issued to F.M.C. Devens.


68.  On December 17, 2001, Health Alliance Hospital issued Exhibit
14 attached hereto showing another operation on the Plaintiff.
The hospital operated to provide access into the Plaintiff's body
for hemodialysis.  The Plaintiff suffered with many operations
that were needed to provide access to his body for the B.O.P.
hemodialysis.  Dr. Howard and the defendants failed to follow the
B.O.P. medical policy that requires the community standard of care
with the Plaintiff.  Based on the Plaintiff's positive antilupus
anticoagulant disease, the Plaintiff should have had a kidney

- 32 -

transplant organ donor evaluation in October 2001.  It is now year 2004 and Dr. Howard and the defendants prevent and withhold the medically adequate organ kidney donor evaluation.

69.  On May 22, 2002, Health Alliance Hospital issued <u>Exhibit 15</u> attached hereto the Plaintiff's medical record.  The discharge diagnosis demonstrates the following medical deprivations the Plaintiff was suffering with:

1.  End stage renal disease initiated hemodialysis
2.  Hypercoagulable state with positive lupus anticoagulant and anticardiolipin antibodies
3.  Hypertension
4.  Hyperkalemia
5.  Congestive Heart Failure
6.  Clean coronaries right cardia catheterization
7.  Anemia secondary to renal failure

70.  On June 18, 2002, Health Alliance Hospital issued <u>Exhibit 16</u> attached hereto, the Plaintiff's medical record.  The medical record shows the Health Alliance Hospital acting to open peritoneal dialysis access that failed.  The peritoneal dialysis access failed to work based on the Plaintiff's antilupus anticoagulant disease.  The medical record demonstrates one of the many nonstop operations the Plaintiff suffered from October 2001 through the filing of the instant action in 2004.  The medical deprivations should have been treated with the adequate medical care under the B.O.P. organ transplant kidney donor policy.

71.  On July 10, 2002, Dr. Howard issued Exhibit 17 attached here-
to the Plaintiff's medical record, showing the need for another
outside hospital operation.  The non-stop outside hospital oper-
ations could have been prevented with the adequate medical care
under the B.O.P. transplant kidney donor policy.

72.  On September 5, 2002, F.M.C. Devens Medical Offical, S.C.
Smith, P.A., issued Exhibit 18 attached hereto, the Plaintiff's
medical record.  The document reviews another operation the Plain-
tiff suffered with.  The operation was for further access to allow
the B.O.P. hemodialysis.

73.  On September 7, 2002, the Health Alliance Hospital issued
Exhibit 19  attached hereto, showing the hospital medical record
explaining the Plaintiff's medical deprivations.  The Hospital
medical record demonstrates the Plaintiff was suffering ongoing
with malfunctioning continuous ambulatory peritoneal dialysis
catheter which needed revision a  further medical procedure.
The foregoing medical deprivation is in the first paragraph of
the hospital record in exhibit 19.  The second paragraph sets
forth the Plaintiff was suffering with a history of antiphospholipid
syndrome with hypercoagulable state and deep vencus thromboses in
the past and was started on hemodialysis in May of 2002.  There-
after the hospital confirms the ambulatory peritoneal dialysis
caused the plaintiff to have a catheter placed in June 2002.
However, the hospital record states it was notfunctioning after
the placement despite repeated tries to gain access.

- 34 -

74.  The above Health Alliance Hospital medical record sets forth
the following in the second paragraph.  Also of note on the past
hospitalization he was placed on intravenuous haparin perioperatively
and developes thrombocytopenia and was seen by Dr. Alzoubie from
hematology.  In the third paragraph, the hospital reviews the
Plaintiff's past medical history.  The record states the Plaintiff
has hypertension and coronary artery disease.  Based on the Plain-
tiff's prolonged pain and suffering from October 2001 at F.M.C.
Devens, Dr. Howard and the defendants violated the two B.O.P.
medicl policies by failing to place the plaintiff under the medi-
cally needed and adequate B.O.P. organ transplant evaluation.

Dr. Howard and the defendants had no formal outside contract
from the inception of the organ transplant policy in February 2000
through January 2004 to perform the organ transplant protocol.  Dr.
Howard and the defendants failed to provide any inmate at F.M.C.
Devens with the organ transplant protocol kidney donor operations.
The failure in providing any kidney donor transplants took place
from the inception of the B.O.P. transplant policy, February 11,
2000 through January 2004.  The Plaintiff claims he was deprived
the required adequate medical B.O.P. organ transplant protocol
based on the failure of F.M.C. Devens Dr. Howard and the defen-
dants not having the required organ transplant outside hospital
contract.  Dr. Howard and the defendants failed to comply with the
required procedures under the B.O.P. organ transplant policy from
February 11, 2000, through January 2004.


75.  The Plaintiff claims Dr. Howard and the defendants violated
and breached the intent of the B.O.P. organ transplant policy by

- 35 -

failing to have a contract in position with a transplant center
from February 11, 2000, through January 2004.  The Plaintiff claims
that was one of the reasons Dr. Howard and the defendants failed
to have the Plaintiff act under the B.O.P. organ transplant policy
protocol causing irreparable harm to the Plaintiff.

76.  On September 13, 2002, the Health Alliance Hospital issued
exhibit 20 attached hereto, showing the medical record issue with
the Plaintiff.  The hospital record shows the plaintiff was
suffering with fever, abdominal pain, nausea and vomitting.
The Hospital medical records further state the failure of the
medical access operation.  The Plaintiff suffered ongoing failures
in the operations to provide access to his body because of his
positive antilupus anticoagulant disease.  The plaintiff claims
the defendants and Dr. Howard understood the substantial risk
he faced of serious harm and disregarded the adequate medically
needed kidney transplant protocol from October 2001 through the
filing of the instant action.

77.  On September 18, 2002, the F.M.C. Devens Medical Officer
Ms. Godjikean, issued Exhibit 21, the Plaintiff's medical record.
The document shows a further problem with the Plaintiff's catheter
that was needed for access to his body for hemodialysis.  The
record claims the diagnosis showed the Plaintiff suffering from
antilupus anticoagulant disease.

78.  On september 30, 2002, the Health Alliance Hospital issued
Exhibit 22 attached hereto, the Plaintiff's medical record.  The

- 35 -

hospital medical record shows the malfunctioning peritoneal dia-
lysis catheter.  The hospital medical record further sets forth
the Plaintiff had another operation under the September 30, 2002,
Health Alliance Admission.

79.  On October 11, 2002, Dr. Stephen J. Hoenig, M.D. issued Exhi-
bit 23 attached hereto, the Plaintiff's medical record.  The medi-
cal record shows the Plaintiff was taken to Dr. Hoenig's medical
office at Leominster, MA, under medical problems of shaking, chills,
during dialysis where the Plaintiff's catheter had a problem.  Dr.
Hoenig's medical record sets forth he removed the Plaintiff's
catheter that caused the medical need of another procedure to
open further access for hemodialysis.

80.  On October 17, 2002, U-Mass memorial Medical Center issued
exhibit 24 attached hereto, the Plaintiff's medical record.  The
U-Mass Memorial Medical Center's medical record explains the Plain-
tiff was transferred to the U-Mass Hospital from the Leominster
Hospital for tessio placement.  The Plaintiff required removal of
his catheter that had to be replaced for further access to his
body.  The U-Mass medical record further explains the Plaintiff's
past medical history and ongoing problems including hypertension
and antiphospholipid syndrome.

81.  On October 22, 2002, Dr. Jahan Montague issued Exhibit 25
attached hereto, the Plaintiff's medical record.  The document
shows the ongoing problems the Plaintiff suffered with under hemo-
dialysis.  The medical record sets forth the Plaintiff's neck had

- 36 -

a hematoma at the left side that required treatment.  In addition,
the medical record states the Tenckhoff catheter required removal.
We see further medical complications took place that required treat-
ment.

82.  On October 19, 2002, Dr. Michael J. Rohrer, M.D., issued <u>Exhi-
bit 26</u> attached hereto, the Plaintiff's medical record.  The docu-
ment shows Dr. Jahan Montague above Was the referring physician
with Dr. Sandra Howard.  The medical record explains the Plain-
tiff's medical problems with the failure of the peritoneal dialy-
sis catheter.  The medical record demonstrates a series of ongoing
medical procedures the Plaintiff suffered with.

83.  On October 29, 2002, F.M.C. Devens Medical Offical Ms. Godje-
kian issued <u>Exhibit 27</u> attached hereto, the Plaintiff's emergency
room medical record.  The document explains the Plaintiff was taken
to the Leominster Hospital emergency room on or about October 29,
2002.  The record sets forth the Plaintiff was suffering with
antilupus anticoagulant syndrome and had an emergency access medi-
cal problem with related medical issues needing treatment.

84.  On the following dates, the defendants issued documented medi-
cal records showin the Plaintiff's suffering from irreparable
harm.  Under some of the medical record dates, documents were
issued by both the defendants and outside medical contractors
who provided medical assistance for F.M.C. Devens.  Whenever the
outside medical contractor issued their medical records, the
defendants would issue their medical record interpreting the out-

- 37 -

side medical contractor's service regarding the Plaintiff's irre-
parable harm and need for medical care.

85.  On January 9, 2003, the defendants issued their Plaintiff's
medical record showing the damage to the Plaintiff's fistula access
that needed the outside medical contractor's care.  The defendants
date for the requested contractor's care was filed on January 2,
2003, by consultation sheet.  The outside contractor responded
on the defendants' medical record on January 9, 2003, signed by
Michael Roher, M.D., signing the consultation sheet medical record.

86.  On February 7, 2003, the defendants moved the Plaintiff to
U-Mass hospital for special medical attention on the Plaintiff's
right arm access.  The Plaintiff suffered ongoing irreparable
harm with his access failures.  The defendants have medical records
showing the U-Mass hospital special treatment to the Plaintiff's
right arm injury.

87.  On March 14, 2003, the defendants moved the Plaintiff to the
U-Mass Hospital based on a number of medical problems the Plain-
tiff was suffering with.  The chief complaint was ongoing head-
ache for about one month with some vomiting and blurred vision.
The U-Mass Health Alliance Hospital issued their detailed medical
records regarding the plaintiff's medical problems.  The defen-
dants have the medical records showing the Plaintiff's injuries.

88.  On March 25, 2003, Dr. Williams acting as the F.M.C. Devens
Medical Staff Official, reviewed and stamped the March 14, 2003,

- 38 -

Health Alliance Hospital, Leominster Campus record. The Plaintiff claims Dr. Williams terminated her position at the F.M.C. Devens in 2003 based on the negligence that was taking place under the direction of Dr. Howard and the defendants.

89.  On May 20, 2003, the defendants moved the Plaintiff to the Health Alliance, U-Mass hospital, for another access operation. The Plaintiff had suffered irreparable harm when his February 2003 access operation failed, causing the need for another access operation.

90.  On June 9, 2003, the defendants moved the Plaintiff to the Health Alliance U-Mass hospital based on the Plaintiff becoming sick at hemodialysis.  Plaintiff was taken to the Leominster campus for treatment.  The defendant has medical records showing the hospital treatment, that held the Plaintiff at the Hospital for several days.

91.  On Novmeber 20, 2003, the Plaintiff was moved to the U-Mass Hospital to treat the blood clots.  The Plaintiff's access was failing based on blood clots that required the U-Mass hospital doctors to operate on the Plaintiff.

92.  On December 9, 2003, the Plaintiff was moved to U-Mass hospital needing further medical procedures to provide access for hemodialysis.  The December 9, 2003, treatment was attached to the prior access operations that required ongoing repair.

<u>ON DECEMBER 19, 2003, THE DEFENDANTS BY THE B.O.P.,</u>

<u>SET FORTH THE PLAINTIFF MAY DIE BASED ON THE B.O.P. FAILURE</u>

<u>IN SECURING THE NEEDED KIDNEY ORGAN DONOR CONTRACT</u>

93.  In <u>Exhibit 27A</u> attached hereto on December 19, 2003, the
B.O.P. issued their response in the last part of the Plaintiff's
exhaustion of prison remedies.  The B.O.P. response was signed by
Harrell Watts, the Administrator of National Inmate Appeals.  Next
to Mr. Watts's name, a second B.O.P. official signed their name
by setting forth several letters.  The Plaintiff claims the se-
cond name belongs to one of the B.O.P. Central Main Office attor-
neys, who drafted the response for Mr. Watts.

94.  The <u>Exhibit 27A</u> B.O.P. response in the third paragraph states
                many individuals with organ failure <u>die</u> while waiting
                for an organ.

95.  In the first sentence of the third paragraph, the B.O.P. con-
cedes they failed to secure a kidney donor organ transplant con-
tract that would place any inmate on the required kidney organ
sharing waiting list.
     The Plaintiff claims the B.O.P. failed and violated their
organ transplant policy by failing to secure the medically adequate
organ donor hospital contract.  The B.O.P. concedes in the response
they are unable to act under the required medically needed organ
transplant policy in gaining access to the kidney donor waiting
list.

THE B.O.P. FAILS TO ACT WITH THE PLAINTIFF IN GAINING
HIS KIDNEY DONOR KNOWING HE WILL DIE UNDER THE B.O.P. EXHIBIT 27 A
RESPONSE IN PREVENTING A KIDNEY DONOR FROM THE ORGANIZATIONS
THAT SHARE KIDNEY ORGANS

96.  The B.O.P. concedes in the Exhibit 27A response that they
have deprived the Plaintiff of the organ donor transplantation
protocol preventing the benefit to a kidney donor.

97.  In the Exhibit 27A B.O.P. response, the defendants violate
their February 21, 2000, Organ transplant policy, by setting forth
in the last sentence in the third paragraph:

> If the B.O.P. secures a contract with a transplant
> center which will place inmates on a waiting list,
> B.O.P. has guidelines for evaluating all inmates
> on dialysis to determine which ones are potential
> candidates to receive a kidney.

98.  The Plaintiff claims the B.O.P. failed and violated their
organ transplant policy since February 11, 2000, through the filing
of the instant complaint in 2004.  The defendants caused irrepara-
ble harm to the Plaintiff by failing to enter into a kidney donor
transplant contract since February 11, 2000, that provides the
right to place the plaintiff on the kidney donor sharing list.
The defendants concede the above violations of their kidney donor
organ transplant policy in Exhibit 27A attached hereto.

99.  The Plaintiff claims the defendants knew and understood the
substantial risk of irreparable harm the Plaintiff faced without
a kidney transplant.  However, the defendants failed to gain the

- 41 -

medically required adequate kidney donor contract from February
11, 2000, through 2004.  The defendants could have taken the reason-
able measures to abate the plaintiff's irreparable harm from February
11, 2000 through 2004, by entering into the adequate medical kidney
donor transplant contract.  The defendants were required to provide
the kidney donor transplant protocol that listed the Plaintiff on
the kidney organ sharing list.

100. The defendants set forth in Exhibit 27A their response dated
December 19, 2003, from the B.O.P. Washington, D.C. Main Office
that the Plaintiff can not be put on the kidney donor waiting list.
That position puts the Plaintiff in the risk of death.  The Plain-
tiff can gain access to the kidney donor list at home in Texas.

101. The defendants know the substantial risk of death the Plain-
tiff suffers without placement on the required medically adequate
kidney donor waiting list.  The defendants must place the Plain-
tiff into position in Texas to gain access on the kidney donor
waiting list.  The defendants are causing daily irreparable harm
to the Plaintiff by failing to allow the placement on the kidney
donor waiting list in Texas where the Plaintiff has his home and
can gain access to the kidney donor waiting list.

102. The defendants concede in Exhibit 27A that they failed in
gaining the medically adequate hospital contract that is required
to place the Plaintiff on the kidney donor waiting list.

103. The defendants concede in Exhibit 27A that their failure in

entering into the required medically adequate hospital kidney transplant contract is the cause of irreparable harm to the plaintiff. The defendants must mitigate their damage to the Plaintiff from October 2001 through 2004 when this action was filed. The Plaintiff must be allowed access to the required medically adequate kidney donor list to prevent the risk of death. In Texas at the Plaintiff's home, he can gain access to the kidney donor list. The Plaintiff is camp status, the lowest form of B.O.P. security level. The Plaintiff presents no risk to the Texas community by gaining access to the kidney donor waiting list from his home in Texas.

<u>THE ACTION WAS FILED UNDER TWO KEY GROUNDS</u>

<u>CONSTITUTIONAL VIOLATIONS AND THE DEFENDANTS' FAILURE</u>

<u>TO FOLLOW THEIR TWO MEDICAL POLICIES</u>

104. The Plaintiff brings the instant action under the defendants violations of their two medical policies. In addition, the Plaintiff claims Dr. Howard acting as the Medical Director at F.M.C. Devens violated the Plaintiff's constitutional rights under cruel and unusual punishment. The court is respectfully requested to interpret the two grounds under the defendants' violations of their two medical policies and constitutional violations by Dr. Howard.

105. The instant complaint does not name Dr. Howard as a defendant based on the need for the honorable court's ruling under constitutional violations first before naming the prison staff official.

- 43 -

106. Should the court rule the Dr. Howard role in the instant action demonstrates constitutional violations, the Plaintiff should be allowed a jury trial, At the time of the court's ruling against the Dr. Howard constitutional violations the Plaintiff should be allowed to supplement the complaint under F.R.Civ.P. 15, naming Dr. Howard in her individual capacity.

107. Under the Plaintiff's exhaustion of B.O.P. remedies, the damages demanded in the complaint are limited and must be set by the court.  The Plaintiff did not file his allegations under the federal Tort claims act at the time of filing of the complaint.

<u>WHEREFORE THE PRO SE PLAINTIFF</u>

<u>DEMANDS THE FOLLOWING:</u>

1.    Judgment for compensatory damages to be proven at trial by the court or in front of a jury under constitutional violations by Dr. Howard;

2.    Judgment for compensatory damages to be proven at trial by the court for the defendants' violations of the two B.O.P. medical policies;

3.    Judgment for punitive damages under constitutional violations by Dr. Howard to be proven at trial in front of a jury;

4.    Appointment of counsel by the court to allow litigation of the complex issues of fact and law;

5.    Trial by jury of all issues so triable which the Plaintiff respectfully demands;

- 44 -

6.  Payment of all fees and costs, including legal fees by the defendants; and

7.  Leave to the court to amend and or supplement the complaint as the interest of justice requires.

Respectfully,

Dated : January 12 , 2004          by _Daniel E. Salinas_____

DANIEL E. SALINAS

Pro Se Plaintiff

- 45 -